**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 96-20847**
_____


**ANGLO-DUTCH (TENGE) L.L.C.,**

                              **Plaintiff-Appellee-Cross-Appellant,**

                    **versus**

**GERALD M. WALSTON,**

                              **Defendant-Appellant-Cross-Appellee.**


_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-1812)
_____


February 11, 1999

Before KING, Chief Judge, and JONES, Circuit Judge, and WERLEIN,[*]
District Judge.

EDITH H. JONES, Circuit Judge:[**]

        The instant appeal would be convoluted enough were it
confined to the merits of the questions at bar, which center around
the authority to hire and fire the manager of a multi-tiered
international business venture with a number of participants and
limited liability companies.  But the matter is not that straight-

_____

[*]District Judge for the Southern District of Texas, sitting by
designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

forward. It also involves parallel litigation in state court, culminating in an arbitration award that bears significantly on the matters before this court. This opinion will attempt to interweave the related strands of litigation and explain why it is our conclusion that resolution of the business dispute, from the standpoint of the parties' substantive claims and counterclaims, is now moot, while the attorneys fee award in favor of Anglo-Dutch (Tenge) (ADT) lacks legal support and must be reversed.

To make a long story short, ADT filed suit against Walston in Texas state court seeking an injunction to enforce its firing of Walston as the managing director of a joint venture to develop oil in the former Soviet Republic of Kazakhstan. ADT sought damages based on Walston's interference with its contractual relations with other tiered companies in the joint venture and with other investors. It also accused Walston of misuse of confidential or proprietary information. The claims all sounded in tort, and the complaint sought injunctive relief, damages and attorneys fees under Texas law.

Walston removed this case to federal court. While Walston was challenging ADT's authority to terminate him in the federal court proceedings, litigation had erupted between ADT and other members of the joint venture in state court concerning the parties' management authority. Temporary restraining orders in both suits were granted and vacated; multiple hearings occurred; fortunately, the intricate procedural details are unnecessary to recount here.

In federal court, several hearings occurred within one month, and the district court concluded that a very narrow declaratory judgment was more appropriate than the injunctive relief originally sought by ADT. Accordingly, he accepted an amendment of ADT's complaint, wrote a brief opinion stating that ADT had authority to terminate Walston and had effectively done so on May 17, 1996, and entered this as a declaratory judgment. Later, the court awarded ADT attorneys fees against Walston. After further post-trial skirmishing, Walston appealed.

In the meantime, the state court proceedings resulted in an arbitration decree, of which this court takes judicial notice. The arbitration award concluded that ADT

> was validly terminated as the administrative member of Tenge Development, L.L.C., by the non-administrative members of Tenge Development, L.L.C., effective as of May 31, 1996.

This award, originally issued subject to a confidentiality order, was never brought to the attention of the federal district court. It was, however, entered on August 12, 1996, after the district court rendered his initial opinion, but while a number of other matters were being vigorously disputed before him.

On appeal, Walston asserts numerous challenges to the events and result in the district court. He contends that the district court should not have entered a declaratory judgment since ADT had no authority to sue under the relevant corporate agreements; that ADT never requested declaratory relief; that Walston was given no notice that the hearings in which he

3

participated would be dispositive of the case; and that the court erred in dismissing his counterclaims. He also asserts that ADT never had the authority to terminate him. These issues are all theoretically interesting, but even as the parties were appearing before Judge Hughes in early July, 1996, prior to the arbitrator's decision that ADT's status as administrative partner had terminated at the end of May, there was a premonition of the futility of the district court's ruling on the merits. As of the July, 1996 hearing, the parties were representing to the court that Walston had essentially been re-hired by other members of the joint venture, and he was at that moment in Kazakhstan working on the venture's business. Walston's counsel re-confirmed at oral argument on appeal that his client had been re-hired by the joint venture about a month after his termination.

Seen in the light of the subsequent actions of the investors and the arbitration ruling, the dispute between ADT and Walston boils down to a temporary interruption in Walston's employment. Further, Walston was caught in the middle of a dispute among the investors that evidently worked itself out in other litigation.

This is not to say that it was improper for the district court to resolve the case on the merits at the time judgment was rendered. The court was well aware of the state litigation and endeavored to issue a narrow ruling that would not hamstring any of the parties in their future dealings. Further, for whatever reason, the district court was never informed of the arbitration

4

ruling in time to reconsider his opinion concerning the scope of ADT's authority in the joint venture. It appears, however, that ADT's term of authority over Walston was short-lived, and its continuing ability to pursue this litigation as a representative of the joint venture is in doubt. Consequently, the only "live" issue now in dispute between the parties is Walston's liability for ADT's attorneys fees.

For purposes of resolving this dispute, we shall assume <u>arguendo</u> that the district court properly concluded that ADT had authority to terminate Walston's employment with the joint venture; that the district court could permit ADT to amend its complaint and refine the question of its capacity to sue as well as add a prayer for declaratory relief; that the district court's somewhat unorthodox set of hearings was dispositive; and that declaratory relief was properly issued against Walston. We may also conclude <u>arguendo</u> that if the district court erred in none of these matters, Walston's counterclaims, which simply responded tit-for-tat to the claims of ADT, were also properly dismissed.

But even if we make all these assumptions, the award of attorneys fees is still incorrect. In federal court, attorney fees may be shifted to the losing party, overcoming the American rule that parties pay their own attorneys, only if applicable substantive law permits such awards or if they are authorized by the inherent power of the court to control its proceedings. <u>Alyeska Pipeline Serv. Co. v. Wilderness Soc'y.</u>, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616 (1975). There is no evidence to suggest, and

the district court did not condition its award against Walston on the sort of intemperate conduct that would justify "an inherent power" award of attorneys fees.

ADT argues primarily that attorneys fees were proper pursuant to the Texas Declaratory Judgment Act, Texas Civ. Prac. & Rem. Code § 37.009, but this is wrong for two reasons. First, this court has held that such an award is impermissible, inasmuch as the Texas Declaratory Judgment Act represents a procedural, not substantive basis for fee-shifting. Utica Lloyd's of Texas v. Mitchell, 138 F.3d. 208, 210 (5th Cir. 1998). Second, declaratory judgment was never requested by ADT pursuant to Texas law; instead, the district court awarded the relief sua sponte. See Fed. R. Civ. Proc. 57, Advisory Committee Note. The district court was thus acting pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201, which does not authorize fee shifting. Under the circumstances, the attorneys fee award against Walston must be reversed.

For the foregoing reasons, we conclude that the parties' dispute on the merits of this appeal is now moot, in that no significant controversy continues to exist between them, but that the attorneys' fee award issued when the case was not moot must be reversed.

The merits of the appeal are **DISMISSED** as moot; attorneys fee judgment of the district court is **REVERSED**.